## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CRIMINAL ACTION** |
| | : | **NO. 10-177-02** |
| **v.** | : | |
| | : | |
| **RICHARD GOODE** | : | |
| | : | |

### MEMORANDUM

**KENNEY, J.**                                                    **November 02, 2020**

Defendant Richard Goode brings this *pro se* Motion for Compassionate Release under 18 U.S.C. § 3582(c)(l)(A)(i), arguing that his asthma places him at a heightened risk of serious complications were he to contract the COVID-19 virus while incarcerated. The Government opposes Defendant's Motion for Compassionate Release ("Motion") based on its consideration of the 18 U.S.C. § 3553(a) factors and argues that his asthma does not present an extraordinary and compelling reason to warrant a reduction of his sentence under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act. Because Mr. Goode's medical condition and his commendable work to better himself during his incarceration do not meet the requirements for compassionate release under the compassionate release statute, the Court will deny his Motion.

### I.    BACKGROUND

#### A.    *Mr. Goode's Criminal History*

1

Mr. Goode is a career offender with a history of drug and firearm offenses. *See* ECF No. 95 at 7. He is currently serving his sentence that stems from a March 10, 2010 arrest. Mr. Goode was arrested while in possession of one bag of cocaine weighing approximately 13.27 grams, 22 packets of "crack" cocaine weighing approximately 3.98 grams, and 4 packets of heroin weighing approximately 72 milligrams. ECF No. 99 at 61. The arrest occurred within 1,000 feet of the Stephen A. Douglas School located at 2700 East Huntington Street in Philadelphia, PA. *Id.* at 66. At the time of this arrest, Mr. Goode was on parole from a state sentence. ECF No. 95 at 27.

On December 13, 2010, Mr. Goode pleaded guilty to the following: one count of possession with intent to distribute cocaine, a Schedule II controlled substance, in or near a school zone, in violation of 21 U.S.C. §§ 841(a)(I) and 860; one count of possession with intent to distribute heroin, a Schedule II controlled substance, in or near a school zone, in violation of 21 U.S.C. §§ 841(a)(l) and 860; and one count of possession with intent to distribute cocaine base ("crack"), a Schedule II controlled substance, in or near a school zone, in violation of Title 21 U.S.C. §§ 841(a)(l) and 860. ECF 108 at 1. On March 11, 2011, the Honorable Robert F. Kelly sentenced Mr. Goode to 210 months imprisonment based on his status as a career offender under the United States Sentencing Guideline ("USSG") § 4B1.1. ECF No. 108 at

1–2. His sentence was enhanced under USSG § 4B1.1 based on two prior state convictions for the manufacture and delivery of controlled substances. *Id.* at 2.

Mr. Goode is incarcerated at the FCI Petersburg Low in Hopewell, Virginia, and has an expected release date of April 17, 2025.  ECF No. 126 at 3.

B. *Mr. Goode's Health History*

Mr. Goode is a 40-year-old man with a history of asthma. He receives regular care for his asthma in the Chronic Care Clinic at FCI Petersburg. Mr. Goode has experienced asthma his whole life. Before this year, Mr. Goode's symptoms were generally stable and controlled by medication. *See* ECF 127 at 10 (noting "mild intermittent asthma diagnosis;" stating "[p]atient is stable."). On April 23, 2020, Mr. Goode was treated by the Bureau of Prisons ("BOP") health services after experiencing "[shortness of breath] when he walk[ed] a short distance, . . . chest tightness, and non-productive cough." ECF No. 123 at 5. At that appointment, he reported using a rescue inhaler daily and experiencing occasional nighttime symptoms. *Id.* In an April 29, 2020 follow up visit, his physician noted that his asthma was controlled with medication and that Mr. Goode was "stable on [his] current regimen." *Id.* at 3.

On June 3, 2020, Mr. Goode returned to BOP health services for a sick call noting that he "still wheezes and [is] tired when he walks some distance." ECF No. 127 at 2. He reported using his prescribed Albuterol inhaler about four times per day

in addition to his prescribed daily inhaler. *Id.* At that appointment, Mr. Goode's provider noted that his "moderate persistent asthma" was possibly exacerbated by an upper respiratory infection. *Id.* She prescribed Mr. Goode daily Prednisone tablets and advised him to avoid irritants such as dust. *Id.* at 3, 2. Mr. Goode denied experiencing any shortness of breath or fever. *Id.* at 2.

## II.   DISCUSSION

Mr. Goode *pro se* moves for compassionate release under 18 U.S.C. § 3582(c)(l)(A)(i). ECF No. 123 at 1.   "[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization." *McMillan v. United States*, 257 F. App'x 477, 479 (3d Cir. 2007). Under the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i), a defendant may petition the court to reduce or modify a term of imprisonment where (1) "extraordinary and compelling reasons warrant such a reduction," (2) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (3) "after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c); *see also United States v. Rodriguez*, 451 F.Supp.3d 392, 395 (E.D. Pa. 2020).  A defendant filing a motion under § 3582(c)(1)(A)(i) must have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or have experienced a "lapse of 30 days

from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).[1]

Congress has not defined the term "extraordinary and compelling reasons" but rather delegated that responsibility to the Sentencing Commission. *See* U.S.S.G § 1B1.13. The Sentencing Guidelines set out three specific "extraordinary and compelling reasons" based on the defendant's medical condition, age, or family circumstances. *See* § 1B1.13 n.1(A)-(C). The guidelines also include a fourth "catch-all" provision which allows a court to determine whether some other extraordinary or compelling reason exists. *See* § 1B1.13 n.1(D). [2]  In the present case, only the fourth catch-all provision applies.

---

[1] The Government does not contest that Mr. Goode meets this threshold requirement. *See generally* ECF No. 126.

[2] Before the First Step Act was enacted in 2018, "only the Director of the Bureau of Prisons . . . could file . . . 'compassionate-release motions'" under § 3852(c)(1)(A)(i). *Rodriguez*, 2020 WL 1627331, at *2. Although "the First Step Act amended § 3582(c)(1)(A) to allow prisoners to directly petition courts for compassionate release, removing the BOP's exclusive 'gatekeeper' role," the Sentencing Commission "has not updated its policy statement to account for the changes . . . and the policy statement is now clearly outdated." *Id*. at *2–3; *see also United States v. Pawlowski*, 2020 WL 2526523, at *5 n.8 (E.D. Pa. May 18, 2020), aff'd, 2020 WL 3483740 (3d Cir. June 26, 2020) ("The Sentencing Commission has not updated the policy statement to account for this statutory change, and the policy statement is clearly outdated in some respects, as it continues to track the former statutory language permitting a court to reduce a term of imprisonment only '[u]pon motion of the Director of the Bureau of Prisons.'" (quoting U.S.S.G. § 1B1.13 & cmt. n.4)).  A majority of courts have found that, in its current form, the Sentencing Commission's policy statement "provides helpful guidance, [but] … does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)." *Rodriguez*, 2020 WL 1627331, at *4 (alteration in original) (citation omitted) (collecting cases).

A. *Defendant's Motion for Compassionate Release*

In his Motion for Compassionate Release, Mr. Goode argues that his asthma, combined with his likelihood of contracting COVID-19 while incarcerated constitutes an extraordinary and compelling reason for this Court to grant his request for compassionate release. *See* ECF No. 123 at 1. He contends that, according to the CDC, people with "asthma, COPD or any other lung or respirtory [sic] disease" face a high risk of death from the COVID-19 virus. *Id.* Mr. Goode argues that BOP's mitigation efforts are insufficient to protect inmates from infection, specifically because the dorm-style housing units within FCI Petersburg Low make it "impossible to practice social distancing" and because inmates did not initially receive face masks or hand sanitizer. *Id.* When Mr. Goode filed his Motion, FCI Petersburg Low had no positive COVID-19 cases. *See id.* As of filing, the facility has reported 147 recovered cases and no deaths among inmates. "COVID-19 Inmate Test Information," BUREAU OF PRISONS, https://www.bop.gov/coronavirus/index.jsp (accessed Oct. 30, 2020).

Courts may consider "the history and characteristics of the defendant" as part of the § 3553 factors analysis. To that end, Mr. Goode's Motion shows that he is enrolled in the vocational training masonry program and has completed several courses, including one on financial literacy. ECF No. 123 at 8–9. He argues that

these classes are an effort to better himself and ensure he will become a productive member of society upon his eventual release from custody. *Id.* at 2.

### B. *The Government's Response in Opposition*

The Government's August 6, 2020 Response argues that Mr. Goode's Motion should be denied "given the danger that defendant presents to the community, the length of his sentence remaining, and the fact that his asthma does not present a definite risk identified by the CDC for severe disease if he were to contract COVID-19." ECF No. 126 at 1.

The Government first argues that Mr. Goode failed to present an "extraordinary and compelling reason" for his release as required under 18 U.S.C. § 3582(c)(l)(A)(i)(1). ECF No. 126 at 13. To support this claim, the Government references a July 17, 2020 update to the CDC list of COVID-19 high-risk factors. *Id.* (citing https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html). On that page, the CDC lists underlying conditions that "are at increased risk of severe illness from COVID-19" and those that "might be at an increased risk for severe illness from COVID-19." In the Government's view, "inmates with conditions on the latter list do not present an extraordinary basis for relief." *Id.* Because "moderate to severe asthma" is one of the conditions contained on that latter list of conditions that only "might" pose an

increased risk of severe illness, the Government does not consider it an "extraordinary and compelling reason" sufficient to support early release. *Id.* at 14.

Further, the Government claims that whether Mr. Goode suffers from moderate to severe asthma at all "is debatable." ECF No. 126 at 14. According to Mr. Goode's medical records, he has "long presented mild asthma" and did not report new complaints until April 23, 2020 "after the pandemic began." *Id.* In its Motion, the Government states, "[o]n this record, it is possible that Goode presents moderate asthma; it is also possible that he does not and recently exaggerated his symptoms." *Id.*

The Government goes on to argue that, even if Mr. Goode's asthma constitutes an "extraordinary and compelling reason" for early release, his Motion should be denied based on a consideration of the § 3553(a) factors. *See* ECF No. 126 at 16. The Government argues that Mr. Goode "continues to present a danger to the community" and that his Motion "fails to demonstrate how release, 120 months into a 210-month sentence for serious drug trafficking crimes, reflects the seriousness of the offenses, promotes respect for the law, and provides just punishment for the crimes." *Id.*

### C. *Defendant's Reply*

On September 1, 2020, Mr. Goode filed a Motion for Extension of Time to reply to the Government's response "due to a sudden rash of COVID 19 positive

diagnosis [sic]" at FCI Petersburg Low and a resulting lockdown which required inmates stay within their unit and limit access to the law library. ECF No. 130 at 1. He ultimately filed his Reply to Government's Response on October 13, 2020. *See* ECF No. 134. In that Reply, he informed the court that FCI Petersburg had experienced a "drastic outbreak of COVID-19" including "more than 100 positive cases" among staff and inmates as well as "one confirmed death" since he filed his initial Motion in April. *Id.* at 1. According BOP data, that unfortunate death occurred in the nearby FCI Petersburg Medium facility where Mr. Goode does not reside. "COVID-19 Inmate Test Information," BUREAU OF PRISONS, https://www.bop.gov/coronavirus/index.jsp (accessed Oct. 30, 2020).

Mr. Goode's Reply reiterates his argument that perceived inadequacies with the BOP's response to the pandemic in FCI Petersburg Low "pose a particularized risk to him, to cause him to contract COVID-19." ECF. No. 134 at 4. Those inadequacies include a lack of PPE and hand sanitizer as well as difficulties social distancing inherent to the prison's dorm-style housing. *Id.*

Mr. Goode also rejects the Government's characterization of the severity of his asthma. In his Reply, he explained that he is has been diagnosed with moderate to severe asthma and is currently prescribed three different inhalers which he takes four times per day, twice per day, and once per day, respectively. ECF. No. 134 at 5. He concedes that his asthma was managed "months prior, before any outbreak of

positive COVID-19 cases" at FCI Petersburg Low. *Id.* at 7. Yet, he argues that his circumstances have changed and the presence of active cases in the facility places him in immediate danger. *Id.*

Mr. Goode further rejects the Government's allegation that he presents a danger to the community. He notes that he has already been transferred by BOP from a medium security facility to FCI Petersburg Low and that he is presently under consideration for transfer to a minimum-security camp facility. ECF. No. 134 at 7. "If [he] was truly a threat to the community/society, the BOP would never drop his custody level . . . much-less [sic] allow him to be transferred to a CAMP facility." *Id.* Further, Mr. Good has received a 31-month time credit for good behavior which reduced his sentence to 179 months. *Id.*

### D. *The Government's Surreply*

The Government filed its Surreply in Opposition to Defendant's Motion on October 19, 2020. *See* ECF No. 136. The Surreply notes that, though there was an outbreak at FCI Petersburg Low, all infected inmates have recovered and there are no active cases. *Id.* at 1. The Government argues that the lack of deaths and active cases in the facility show "it is obvious that BOP's extraordinary measures have had a beneficial effect." *Id.* Finally, the Government reiterates its position that Mr. Goode's asthma "is an insufficient basis for the extraordinary remedy of

compassionate release, particularly for a person his age without other risk factors." *Id.* at 2.

E. *Analysis*

Under 18 U.S.C. § 3582(c)(l)(A)(i), a court may modify a term of imprisonment after it has been imposed only under certain conditions, including when (1) "extraordinary and compelling reasons warrant such a reduction," (2) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (3) "after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable."   18 U.S.C. § 3582(c); *see also Rodriguez*, 2020 WL 1627331, at *2-3.

i.      **Extraordinary and Compelling Circumstances**

The danger COVID-19 presents to Mr. Goode, an individual with asthma, is not an "extraordinary and compelling" reason sufficient to justify granting early release. Though this Court acknowledges the real danger posed by COVID-19, the Court must evaluate Mr. Goode's Motion within the constraints imposed by 18 U.S.C. § 3582(c)(1)(A)(i) and based on his individual circumstances. The Third Circuit has explained that "[t]he mere existence of COVID-19 in a society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's . . . extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d

Cir. 2020). Though Mr. Goode has shown he suffers from asthma, he has not demonstrated that his condition makes him uniquely susceptible to death or serious illness from COVID-19.

Mr. Goode's medical records show that he has a history of mild asthma that has recently presented as moderate persistent asthma. *See* ECF 127 at 2. The CDC has identified "moderate to severe asthma" as one of several medical conditions that "might" place an individual "an increased risk for severe illness from COVID-19."[3] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Before the flare-up this spring, his asthma had been generally "well controlled" with medication. *See id.* at 10. His recent symptoms have been generally limited to difficulty breathing after walking short distances. *See id.* at 2. Mr. Goode has denied experiencing shortness of breath and has not reported

---

[3] Some recent reports suggest "that asthma may not impact a person's susceptibility to COVID-19 as was initially believed." *United States v. Harris*, 2020 WL 4788027, at *3 (E.D. Mich. Aug. 18, 2020) (citing Danny Harkin, *Asthma is Absent Among Top Covid-19 Risk Factors, Early Data Shows, The New York Times* (Apr. 20, 2020)); *see also United States v. Pomales*, 2020 WL 4677596, at *2 (S.D.N.Y. Aug. 12, 2020) (noting "the evidence on this question is 'mixed,' meaning that 'multiple studies . . . reached different conclusions about [the] risk associated' with asthma"); *United States v. Demirtas*, No. CR 11-356 (RDM), 2020 WL 3489475, at *2 (D.D.C. June 25, 2020) (stating it is an open question whether asthma and allergies, standing alone, place people at a higher risk of severe illness or death resulting from COVID-19); *COVID-19 and Asthma: What Patients Need to Know*, AMERICAN ACADEMY OF ALLERGY, ASTHMA & IMMUNOLOGY, https://www.aaaai.org/conditions-and-treatments/library/asthma-library/covid-asthma (reviewed Aug. 21, 2020) ("It is important to know that currently there is no evidence of increased infection rates in those with asthma."). In the face of this uncertainty, the Court defers to the CDC and assumes individuals with asthma may be at greater risk of serious COVID-19 complications.

any recent asthma attack, *see id.* at 2, and has not suggested that his asthma has worsened since the summer. *See* ECF No. 134.

Courts have denied compassionate release motions where a defendant's asthma symptoms were generally managed by medication, even if the severity of those symptoms had fluctuated over time. *See United States v. Pomales,* No. 16-CR-826, 2020 WL 4677596, at *2 (S.D.N.Y. Aug. 12, 2020) (denying motion where "[defendant] has generally been able to manage his condition with his inhaler and other preventative measures . . . and he has never been hospitalized or intubated on account of his asthma); *United States v. Ramos*, No. 14-CR-484, 2020 WL 1685812, at *2 (S.D.N.Y. Apr. 7, 2020) (finding forty-one-year old inmate with "chronic and severe asthma" did not present an extraordinary or compelling circumstance because "[his] medical records show no new asthma attacks, and that his asthma is being treated by the BOP."); *but see United States v. Canini*, No. 04-CR-283, 2020 WL 4742910, at *3 (S.D.N.Y. June 8, 2020) (granting release where defendant's records indicated his asthma was under-treated and that he was denied his prescribed steroid inhaler).

As a Chronic Care Clinic patient, Mr. Goode receives regular health screenings. In addition to his routine treatment, Mr. Goode has been seen by BOP providers on at least three occasions since the start of the pandemic. *See generally* ECF No. 127. Following those appointments, his prescriptions were updated to

13

respond to his new asthma symptoms. *See id.* The record here shows that, even despite a recent escalation of symptoms, Mr. Goode's asthma condition remains well monitored in his current setting.

Mr. Goode argues that whether his symptoms are well-controlled is irrelevant because the presence of COVID-19 in his facility places him in "immediate danger." ECF. No. 134 at 7. Other courts have rejected this argument. *See*, *e.g.*, *United States v. Ackerman*, No. 11-CR-740, 2020 WL 5017618, at *6 (E.D. Pa. Aug. 25, 2020). In *Ackerman*, the Court explained that the mere possibility an inmate "might contract COVID-19 and might be more likely to experience complications" is not enough to warrant early release. *Id.* at *6. There, the Court declined to grant relief where the defendant, who suffered from hypertension, failed to show that he lacked access to appropriate care in prison or that his condition could not "be properly controlled via medication or other appropriate medical care." *Id.* at *5.The Court explained that the prison's ability to slow the virus' spread to zero active cases by the time the opinion was filed indicated that the BOP's mitigation efforts were limiting the threat of COVID-19 to inmates. *Id.* at *8.[4]

Other courts have also held that the presence of active COVID-19 cases alone does not justify relief where cases appear to be declining or under control. *See*, *e.g.*,

---

[4] Attorney General Barr referred to the facility in question, FCI Danbury, as a hot spot "experiencing significant levels of infection." *Ackerman*, 2020 WL 5017618, at *7.

*United States v. Justis*, No. 15-CR-416, 2020 WL 4365596, at *3 (E.D. Pa. July 29, 2020) ("When a prison is able to keep the number of positive COVID-19 cases low . . . the risk of exposure is too speculative to render the circumstances extraordinary and compelling."); *United States v. Thornton*, No. CR 2:18-167-1, 2020 WL 4368155, at *4 (W.D. Pa. July 29, 2020) ("FCI Elkton has shown signs that BOP measures designed to protect inmates . . . are helping to curtail the spread of the virus . . . . [A]lthough the evidence indicates that Defendant may face a greater risk of contracting Covid-19 at Elkton than at other locations, the degree of risk is not as high as Defendant suggests and appears to be diminishing daily even as cases of Covid-19 rise outside of the prison."); *United States v. Esparza*, No. 1:16-CR-00122, 2020 WL 4805055, at *5 (E.D. Cal. Aug. 18, 2020) ("[I]n the past two months, the active COVID-19 virus cases at FCI Danbury decreased significantly to the point of zero active cases . . . . This development has convinced the court that the defendant's medical conditions and the fact that some of those conditions place him at higher risk of becoming seriously ill if infected by COVID-19, when considered in combination with the status of the virus outbreak at his institution of confinement, do not constitute extraordinary and compelling reasons warranting a reduction of his sentence or his immediate release.").

The number of inmates and staff affected by COVID-19 within FCI Petersburg Low has improved drastically since its peak. As of the date of this

opinion, at least 147 FCI Petersburg Low inmates and 17 staff members have recovered from the virus and there are no active positive cases among inmates. *See* "COVID-19 Inmate Test Information," BUREAU OF PRISONS, https://www.bop.gov/coronavirus/index.jsp (accessed Oct. 30, 2020). This trend suggests that the BOP's mitigation efforts have been successful and that, at least for now, the virus' spread is under control in FCI Petersburg Low. Courts in our circuit have consistently held that "[m]ere speculation concerning possible future conditions does not constitute a 'compelling reason' for release." *United States v. Guzman*, No. 3:16-CR-85, 2020 WL 4515476, at *6 (M.D. Pa. Aug. 5, 2020) (citing *United States v. Epstein*, 14-CR-287-1, 2020 WL 2537648, *2 (D.N.J. May 19, 2020)). The record suggests that Mr. Goode was not exposed to COVID-19 during FCI Petersburg Low's recent spike in cases. The possibility that he will face some future exposure is speculative considering that active cases in his facility are now zero.

Mr. Goode also argues that his rehabilitation weighs in favor of granting his requested relief. "Rehabilitation . . . alone shall not be considered an extraordinary and compelling reason" to grant early release. *United States v. Rodriguez*, 451 F. Supp. 3d 392, 405 (E.D. Pa. 2020). Rather, rehabilitation may be considered in conjunction with other factors. *See id.* (granting release where defendant suffered from diabetes, high blood pressure, and liver disease and was near his scheduled

release date). Because Mr. Goode has not demonstrated that his health problems place him at a unique risk of susceptibility to the COVID-19 virus, and has not argued that any other factors support his release, his rehabilitation alone cannot support a finding that extraordinary and compelling reasons exist to grant release.

> ii.      § 3553(a) Factors

Even if the Court had found that extraordinary and compelling reasons exist, Mr. Goode's Motion would fail based on a consideration of the § 3553 factors. *See* 18 U.S.C. § 3582(c)(1)(A). Before granting compassionate release, this Court must consider the sentencing factors set out in § 3553 "to the extent they are applicable." *Id.* Those factors include "the history and characteristics of the defendant" and "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law . . . and to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553.

In his Reply Brief, Mr. Goode cites several cases where courts granted release to defendants who he alleges committed more serious or more violent crimes than the crimes of which he himself was convicted. *See* ECF No. 134 at 8. The cases Mr. Goode cites are inapposite because each defendant had either a shorter time remaining on his sentence, suffered from more serious health concerns, was older than Mr. Goode, or some combination thereof. *See United States v. Williams*, No. 3:04-CR-95, 2020 WL 1751545 (N.D. Fla. Apr. 1, 2020) (granting release to elderly

17

defendant convicted of armed robbery who experienced multiple heart attacks and received quadruple coronary bypass surgery while in custody); *United States v. Muniz*, No. 4:09-CR-0199, 2020 WL 1540325 (S.D. Tx. Mar. 30, 2020) (granting release where defendant suffered from end-stage renal disease, diabetes, and arterial hypertension); *United States v. Bartrum*, No. 1990 FEL 2059, 2020 D.C. Super. LEXIS 9*, (D.C. Super. Jun. 16, 2020) (granting release to defendant convicted of assault and firearms charges where defendant was receiving radiation treatment for prostate cancer and was only two years from his projected release date).

Mr. Goode is a designated career offender with more than five years remaining on his sentence. He pleaded guilty to possession with intent to distribute cocaine, heroin, and crack after being arrested within 1,000 yards of a school. These are serious offenses that were met with an appropriately serious 210-month sentence. That term fell within the applicable Sentencing Guidelines range and thus is presumed reasonable. *See United States v. Pawlowski*, 967 F.3d 327, 331 (3d Cir. 2020) (citing *Rita v. United States*, 551 U.S. 338 (2007)).  Mr. Goode has taken steps to better himself while incarcerated and is earnestly working on his rehabilitation. These efforts have been rewarded by a 31-month sentence reduction for good behavior and consideration for a transfer to a minimum-security camp facility. However, this Court cannot find that reducing Mr. Goode's sentence by an additional 55 months would appropriately reflect the seriousness of his offense or serve to

adequately deter similar future conduct. Accordingly, the Court finds that Mr. Goode has failed to meet his burden in demonstrating that the § 3553 factors support granting his Motion for Compassionate Release.

## III.   CONCLUSION

For the foregoing reasons, the Court will deny Defendant Richard Goode's Motion for Compassionate Release.  An appropriate order will follow.